EPHRAIM TOMLINSON *vs.* MONTGOMERY STILES.

1. No lien can be created on real estate by a writ of attachment, nor can any title be acquired by virtue of a sale under proceedings in attachment, unless the land is inventoried and appraised, and returned by the sheriff as attached.

2. When a sheriff attaches land he must go to the owner, or such other person as may be in possession, and there make the attachment; and if there is no one in possession, then he must go to the premises, and there execute the writ; and if there are several tracts of land lying in different places, he must do the same in regard to each, but it is not necessary where several lots constitute one farm; and in attaching personal property, he must seize it and take it into possession; and in attaching the rights and credits, he must go to the garnishee, and give him notice of the attachment; and all the property, rights, and credits attached must be inventoried and appraised.

In error to the Supreme Court.

*Merritt* and *Browning*, for plaintiff in error.

*Ten Eyck* and *Dayton*, for defendant.

WHELPLEY, J. This case presents the naked question whether lands not attached, levied upon, inventoried, or appraised by the sheriff, upon a writ of attachment in his hands, may, under our attachment act, be sold and conveyed by the auditors in the attachment, so as to pass title. The sheriff's return shows, beyond all question, that he did not, by any act of his, levy upon or attach the premises in dispute. He returns that he duly executed the writ in the manner directed by law, as per inventory and appraisement annexed. His inventory, to which he refers, is entitled, a just and true inventory and appraisement of all the property and estate of the defendant attached, as follows : All that lot of land called the orchard lot, lying, &c., containing three and one-fourth acres, appraised at four hundred dollars ; also another lot adjoining, &c. ; also a legacy of $5000, bequeathed to defendant, the whole of the value of $5703.

This inventory, which, by the express reference of the return is made a part of it, does not include the premises in question.

The return shows that the sheriff did levy upon certain lands by virtue of the attachment, and that he levied the attachment upon no other lands. It warrants no inference that he levied it on any other lands—none can be drawn without doing violence to the express language of the return.

If any act of the sheriff, while the writ is in his hands, to create a lien upon the land, and authorize its sale, be necessary, the plaintiff's deed must be invalid. If the sheriff had returned that he could not find any rights and credits, moneys and effects, goods and chattels, lands and tenements of the defendant to attach by virtue of the writ, we should have had, so far as the question now presented for decision is concerned, the precise case now

before the court; for this is his return as to the property in dispute. As to it, he did not act—has made no return.

Upon such a return, would the court have been authorized to appoint auditors, or proceed in the attachment? Certainly not. The return would show entire non-compliance with the command of the writ, which, by the express provisions of the act, is to command *him to attach* the rights and credits, &c., lands and tenements of such debtor, wheresoever they may be found. The command of this writ, unlike a *fi. fa. de bonis et terris,* requires *the sheriff to attach* the lands; that requires him to cause to be made of the lands, &c., the debt, &c.

By virtue of that writ he is to sell; by virtue of this, he is not to sell, but simply *to attach.* He is to do some act by virtue of his writ, to charge the lands, *to attach,* to fasten them, to subject them to the plaintiff's debt. After he has done this act, and returned the mode of its performance, his power to do any act to affect the lands is ended. Until the sheriff returns that he has attached something, the court cannot proceed; its jurisdiction has not attached upon anything. It has no control of the person of the defendant to render a judgment against him. The writ itself, without the sheriff, is powerless; that does not attach the lands—it commands him to do it.

The important question is, how is the sheriff to give effect to this writ, thus powerless without his aid? how is he *to attach the land?* The 5th section of the act declares that the officer shall go to the house *or lands* of the defendant, or to the person or house of the person in whose custody or possession the defendant's property and estate may be, and then and there declare, in the presence of one credible person at the least, that he attaches the rights and credits, moneys and effects, goods and chattels, *lands and tenements,* of such defendant, &c.

This requirement contemplates that the defendant may have a house, and lands connected with it, or lands without any house, both unoccupied, or that his house and

lands and his personal estate may be in the custody and possession of some other person ; and the execution of the writ may vary with the circumstances.

The object of the mode of execution required is in the absence of a personal service of the writ, to give publicity to the fact of its execution.

If the house and lands be not in the possession or custody of any person, the officer may go to the house, and there make the declaration; if there be no house, and lands only, then to the lands, and do likewise; if the house and lands be in the custody and possession of any person, then he must go to that person, and make the declaration. If there be goods and chattels in the custody or possession of any person, he must go to that person or his house; if there be rights and credits, he must go to the person who owes the debt or controls the right. The statute does not leave it optional with the officer to select any of the modes of execution mentioned in the act; for instance, he cannot go to the unoccupied house or lands of the defendant, and execute the writ by declaring that he attaches his rights and credits ; he must go to the garnishee, and then garnish or give warning of his attachment in the mode prescribed, or the rights and credits will not be bound.

If the goods and chattels of the defendant be in the bare custody and possession of some other person without interest, he must seize them, take them into his custody and possession.

The statute does not require the officer to go to every lot of land where several lots constitute one tract or farm, nor does it exempt him from going to different tracts lying in different places, not forming part of a whole tract or farm. This section of the act is to be reasonably construed according to the manifest intent of the legislature, which was that the best and most public mode of attachment possible under the circumstances should be adopted ; at all events, he must go to the house or land, or to.

the person in whose custody or possession it is. That there may be no doubt what property is attached, he is required to return with the writ an inventory and appraisement of all the property and estate *so attached.*

It has been strenuously argued by the ingenious counsel for the plaintiff in error that the words "property and estate of the defendant" are used in the act in a restricted sense; that they include everything attachable except lands.

The term property *ex vi termini* includes lands. It is difficult to conceive of any terms more comprehensive in their scope and signification than "all the property and estate of the defendant." That these words were substituted in the act of 1798, (*Pat.* 296,) for the words used in the act of 1748, which only include personal estate, instead of showing, as was boldly contended by the plaintiff's counsel, that they were to have the same signification as the words which they supplanted, according to the well established rules of construction, proves exactly the reverse. If the legislature intended to require personal estate only to be inventoried, why did they reject the appropriate words in the act of 1748, and insert in their stead words clearly signifying land also?

The writ, by the act of 1798, bound the property and estate attached by virtue of the attachment, from the time of executing the same, and so it does under the like provision of the present act.

The terms, "property and estate of the defendant," are not used in any section of the act in such connection as to be inappropriate, giving them the largest sense that can be attributed to them. It is clear that in the act of 1798 they were used to declare that the lands attached should be bound from the execution of the writ, otherwise there was no provision in that act declaring when the land became bound. What good reason can be given for restricting their meaning in the present? I can perceive none. The rule is that if they had that meaning

then, they must have it now, unless a contrary intent is manifest.

But it has been argued that the act of 1820, section 8th of the present act, requires them to be interpreted in the more restricted sense of personal estate. That section declares that it shall not be lawful for any person against whom any attachment shall issue, after issuing the same, to convey his real estate, or any interest therein, of which he may be seized, &c., at the time. It closes with a reiteration of the same idea in another shape, " and all conveyances made by defendant pending the said attachment shall be void against the plaintiff in attachment, and the creditors that shall become parties thereto. The opening and closing sentence plainly indicate the mischief to be remedied, that is, voluntary alienations after the issuing of the writ, and before execution. Alienations after execution were already provided against by the preceding section.

The middle clause of the section merely declares the result of such prohibition ; that in consequence of that (and the preceding section construed with it,) the said writ shall, immediately on the issuing thereof, become and remain a lien on the said lands, (meaning the lands which the sheriff had attached,) as against the defendant and any person claiming under him, by virtue of any such conveyance, until the proceedings in the attachment are ended by payment of the debts or the decision of the attachment against the plaintiff and the applying creditors.

It is said, by plaintiff's counsel, that this clause was unnecessary, (if the preceding section included lands,) so far as it declared that the lien should remain after the execution of the writ. This may be so ; and I will go further and say, that it is only declaratory of the effect of the rest of the section, and does not in any way alter its construction, unless perhaps to intensify the meaning. A declaration that any such conveyance should be unlawful and

void as against the plaintiff and applying creditors, certainly would answer the whole purpose.

I am unable to perceive by what canon of interpretation, surplus phraseology, which does not enlarge or restrict the meaning of that section, can be held to restrict the meaning of the previous section. *Utile non per inutile vitiatur.*

The two sections, read together, provide that lands and personal estate *attached* shall be bound from the execution of the writ, notwithstanding any conveyance by a defendant between the time of issuing the writ and its execution, such conveyance being declared void. This interpretation gives full effect to every significant clause in both sections. It was not the office of that section to declare the attachment a lien on the land from the time of its issue. The language used forbids such an interpretation. That section makes the conveyance of the defendant of any real estate he had at the time of the issue of the writ void as against the attachment, but good for all other purposes. The surplus words may be easily accounted for, by remembering that it was originally a supplemental act, where it is quite common to find unnecessary provisions, or those unnecessarily extensive, covering ground already covered by the original act.

It is impossible to reach the conclusion of the plaintiff's counsel, that this section declares that the writ shall bind the lands absolutely from its issue, without striking out the first and last sections declaring the conveyance unlawful and void against the attachment, and also the word *said* before lands, which doubtless refers to the lands mentioned as attached.

The former part of this opinion, showing the necessity of some *act* by virtue of the writ done by the sheriff *to attach* the land, was, perhaps, sufficient without discussing the construction of this section, as it was criticised by the plaintiff's counsel, not with reference to the question

when the writ begins to bind the land attached by the sheriff, but to show that it dispenses with the necessity of any act by the sheriff.

If the views then expressed be correct, the construction contended for involves the plaintiff in the diffi ulty of insisting that the two sections are in direct conflict, the one requiring a levy or inventory, the other dispensing with it. Both sections must be construed so as to enable them both to operate.

The fallacy of the argument consists in overlooking the different designs of sections 5th and 6th, and 7th and 8th. The first two regulate the mode in which the sheriff shall attach, the last two the effect of his work when done.

That the word attach is synonymous with levy, or inventory, that is, requires an act to be done by the sheriff to bind the land, further appears by the thirty-fifth section of the act, which authorizes the auditors, by virtue of an order of court for that purpose, to make sale and assurance of the goods and chattels, lands and tenements, of the defendant which were attached, and taken as aforesaid, manifestly referring to the acts to be done by the sheriff, as prescribed in the previous sections of the act. Attach is here used to denote an act done, not a mere consequence flowing from the issuing of the writ. They may sell the lands attached—*taken*, not the lands defendant had at the time of the issuing of the writ, whether attached, taken, or not.

The 29th and 30th sections of the act were invoked, as furnishing some countenance to the construction that lands and tenements not attached or taken by virtue of the writ, were intended to be bound by it. The first of these gives the auditors large powers to examine the wife of the defendant, or any other person, touching all matters relating to the trade, dealings, money, debts, effects, rights, credits, lands, tenements, property, and estate of the defendant, and his secret grants, or fraudulent transfer or conveyance of the same. The object of this sec-

tion was to enable the auditors to discover the property which, by the 30th section, they are authorized to issue their warrant to seize; this required the scope of the inquiry to be broad. The property seized is to be inventoried and reported to the court at the next term of the court. What is to become of it then is not expressly provided.

These two sections in no way, directly or indirectly, authorize the auditors to make sale of the lands fraudulently sold, if any may be discovered, nor do they by implication charge the lands with the attachment. It has been already seen that they can, by the terms of the 35th section, sell only the lands which were attached and *taken* as aforesaid. By the two sections under consideration, the auditors are not authorized to attach or seize lands; consequently they may not sell them, unless previously attached.

No difficulty can grow out of this construction of the two sections. If fraudulent alienations of land are discovered, an *alias* writ may issue to attach it.

The question presented for decision seems exceedingly plain, if we adhere to the well-settled rules for the construction of statutes, and do not subject the statute to the tortures of hypercriticism, so plain as to require an apology for the elaborate treatment to which it has been subjected.

The uniform construction put upon this act by the bench, the bar, and the officers concerned in its execution, is important; all have concurred, since the passage of the act of 1798, in treating the term property and estate, used in the act, as including real as well as personal estate. The very sheriff who executed this writ returns an inventory of personal and real estate as of "the property and estate of the defendant." Unbroken, uniform practice under such an act, of all concerned in its execution, is entitled to great weight, even if the question were one of doubt originally. The cases cited by the Chief Justice show the in-

terpretation of the court and judges.   It has been urged that there is no necessity of the inventory and appraisement of the real estate, as that is not included in the bond given on dissolution of the attachment.   This may be so, but the inventory and appraisement is not without its use in informing the court of the nature and value of the property attached when called on to exercise its discretion in the matters required by the act.   Many inconveniences will readily suggest themselves to the practitioner growing out of the doctrine sought to be established, that no service of the writ is necessary to charge real estate, but that it becomes a lien by its own vigor.   Will an attachment out of this court bind lands in every county, although issued and delivered to but one sheriff?

Why should all a defendant's land be bound when a small part is sufficient ?   Within what time must auditors enforce such an all-embracing lien ?

The judgment of the Supreme Court must be affirmed.

*For affirmance*—Judges OGDEN, CLAWSON, WHELPLEY, COMBS, CORNELISON, KENNEDY, RISLEY, SWAIN, and WOOD.

*For reversal*—None.

CITED *in Miller* v. *Dungan,* 7 *Vr.* 23 ; *Boyd* v. *King,* 7 *Vr.* 137.